No. _____

# United States Court of Appeals
# for the Federal Circuit

---

IN RE VIASAT, INC.,

*Petitioner.*

---

*On Petition for a Writ of Mandamus*
*to the United States District Court for the Western District of Texas (Waco)*
*Case No. 6:21-cv-01231-ADA • The Honorable Alan D. Albright*

---

## PETITION FOR A WRIT OF MANDAMUS

---

J. Scott McBride
Matthew R. Ford
Nevin M. Gewertz
Meg E. Fasulo
Ravi D. Shah
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
(312) 494-4400

Nosson D. Knobloch
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
(303) 592-3100

*Counsel for Petitioner Viasat, Inc.*

NOVEMBER 22, 2024

# CERTIFICATE OF INTEREST

Counsel for Petitioner Viasat, Inc. certifies the following:

1.    The full name of every party represented by me is:

Viasat, Inc.

2.    The full name of the real parties in interest represented by me is:

None

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

BlackRock, Inc.

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by me in the originating court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Bartlit Beck LLP (Tulsi E. Gaonkar, Jessica R. Bernhardt)

Gillam & Smith LLP (Melissa R. Smith)

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. See Fed. Cir. R. 47(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary).

*Kioxia Corp. v. Viasat, Inc.*, No. 2024-1384 (Fed. Cir.)

6.    Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). See Fed. Cir. R. 47.4(a)(6).

None

November 22, 2024                    */s/ Meg E. Fasulo*
                                     Meg E. Fasulo
                                     *Counsel for Petitioner Viasat, Inc.*

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ............................................................ 1

RELIEF SOUGHT ........................................................................................ 1

I.    Introduction ........................................................................................ 2

II.    Issue Presented .................................................................................. 4

III.    Background ......................................................................................... 4

    A.    The District-Court Litigation Is Ready For Trial ....................... 4

    B.    *Inter Partes* Review Proceedings Confirmed The Patentability Of The Majority Of Challenged Claims ........................................... 8

        1.    The Board Upheld All Challenged Claims As Patentable In Kioxia's *Inter Partes* Review ................................. 8

        2.    The Board Found Six Challenged Claims Unpatentable In Western Digital's *Inter Partes* Review ................................. 12

    C.    The District Court *Sua Sponte* Stayed The Case 10 Days Before Trial ...................................................................................... 13

IV.    The District Court Abused Its Discretion In Staying This Case ....................... 14

    A.    All Stay Factors Weigh Against A Stay Here ........................... 15

        1.    The District Court Clearly Erred By Ignoring The Board's Final Written Decision Finding All Challenged Claims Patentable ...................................................................... 15

        2.    The District Court Incorrectly Believed That Kioxia Seeks Outright Reversal Of The Board's Patentability Decision .......... 19

        3.    The District Court Misunderstood The Estoppel That Applies to Viasat ..................................................................... 22

    B.    Mandamus Relief Is Appropriate ............................................. 26

    C.    In The Alternative, Viasat Requests For This Court To Expedite Kioxia's IPR Appeal ................................................................... 26

V.     Conclusion ................................................................................................ 26

# TABLE OF AUTHORITIES

## Cases

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
  908 F.3d 792 (Fed. Cir. 2018) ..................................................................... 20

*Bankers Life & Cas. Co. v. Holland*,
  346 U.S. 379 (1953) ................................................................................... 14

*Cheney v. U.S. Dist. Court for the Dist. of Columbia*,
  542 U.S. 367 (2004) ................................................................................ 3, 26

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
  No. 14-1430-LPS-CJB, 2018 WL 1061370 (D. Del. Feb. 26, 2018) ......................... 17

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ..................................................................... 14

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. 18-452-WCB, 2020 WL 6270776 (D. Del. Oct. 26, 2020) .......................... *passim*

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................... 14

*LSI Corp. v. Regents of Univ. of Minn.*,
  43 F.4th 1349 (Fed. Cir. 2022) ..................................................................... 18

*Neonode Smartphone LLC v. Samsung Elecs. Co.*,
  No. 6:20-cv-00507-ADA, 2023 WL 11915742
  (W.D. Tex. Mar. 22, 2023) ...................................................................... *passim*

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,
  No. 6:11CV492, 2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ................................ 17

*Oyster Optics, LLC v. Ciena Corp.*,
  No. 17-cv-05920-JSW, 2019 WL 4729468 (N.D. Cal. Sept. 23, 2019) ...................... 21

*ParkerVision, Inc. v. Qualcomm Inc.*,
  116 F.4th 1345 (Fed. Cir. 2024) ..................................................................... 24

*Pers. Audio LLC v. Google, Inc.*,
  230 F. Supp. 3d 623 (E.D. Tex. 2017) ............................................................. 21

*Realtime Data LLC v. Hewlett Packard Enter. Co.,*
  No. 6:16-cv-00086-RWS, 2018 WL 3608544 (E.D. Tex. July 27, 2018) ................... 21

*Ultratec, Inc. v. CaptionCall, LLC,*
  611 F. App'x 720 (Fed. Cir. 2015) ..................................................................................... 26

*UNM Rainforest Innovations v. D-Link Corp.,*
  No. 6:20-CV-00143-ADA, 2023 WL 2706748 (W.D. Tex. Mar. 29, 2023) ........ 17, 18

*VLSI Tech. LLC v. Intel Corp.,*
  53 F.4th 646 (Fed. Cir. 2022) ........................................................................................... 19

**Statutes**

35 U.S.C. § 315 ...............................................................................................................22, 23

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding was previously before this or any other appellate court.

This Court's decision may directly affect or be directly affected by:

*Kioxia Corp. v. Viasat, Inc.*, No. 2024-1384 (Fed. Cir.).

## RELIEF SOUGHT

Petitioner Viasat, Inc. respectfully petitions for a writ of mandamus directing the United States District Court for the Western District of Texas (Waco Division) to vacate its *sua sponte* order staying this case pending resolution of the appeal of the Patent Trial and Appeal Board's decision in *Kioxia Corp. v. Viasat, Inc.*, No. 2024-1384 (Fed. Cir.) and to schedule trial in this case as soon as practicable.

In the alternative, Viasat requests that this Court schedule argument in *Kioxia Corp. v. Viasat*, which is fully briefed, on the next available argument calendar.

## I.    Introduction

Three years ago, Viasat sued Kioxia for patent infringement. Over the following years, Viasat and Kioxia expended enormous effort and resources preparing for trial. That effort included IPR proceedings in which the Board upheld the sole claim that Viasat planned to assert at trial—claim 16 of the '700 patent. The trial was scheduled to begin last month, and both parties were prepared to proceed.

But less than two weeks before trial, the district court *sua sponte* announced, without any briefing or presentation by the parties, that it was staying the case pending resolution of Kioxia's appeal from the Board's final written decision *upholding the validity* of claim 16 (alongside all other claims Kioxia challenged). Notably, the case had *not* been stayed even after the Board instituted Kioxia's IPR, and Kioxia had never suggested that the trial be stayed pending its appeal from the Board's decision. The district court also recognized that two of the three stay factors—prejudice to Viasat and the late stage of proceedings—weighed against a stay.

The district court nevertheless stayed the case because a "stay will simplify the issues in this Action." Appx3. The district court's basis for finding simplification was that "there is a reasonable likelihood that the PTAB will find the asserted claim unpatentable." Appx5. That is indisputably wrong given that *the Board already found the asserted claim patentable.* The district court never even addressed the relevant question, which is whether *this Court* is sufficiently likely to *reverse* the Board's decision as to claim 16, leading to an invalidity finding on remand, to warrant a stay.

2

In reality, it is exceedingly unlikely that this Court will reverse the Board's decision, let alone that the Board would then find claim 16 invalid on remand. Kioxia's appeal raises a single question of claim construction. This Court is likely to uphold the Board's construction, which depended on detailed factual findings that Kioxia did not even challenge. Regardless, claim 16 does not even include the relevant claim term, so even if this Court reverses and remands as to some of the claims, this Court is still likely to affirm as to claim 16. And even if this Court did send claim 16 back to the Board, the Board is likely to uphold claim 16 again given that the remand would focus entirely on a claim construction that does not pertain to claim 16. Put simply, there is almost no universe in which the appeal or any subsequent Board proceedings has any bearing on the validity of claim 16—the only claim asserted at trial.

Viasat recognizes that mandamus is an "extraordinary remedy." *Cheney v. U.S. Dist. Court for the Dist. of Columbia.*, 542 U.S. 367, 380 (2004). But the unprecedented nature of the district court's decision, combined with its blatantly erroneous reasoning and the immense harm it causes Viasat, warrants this Court's intervention. Viasat is not aware of a single other case in which a district court has, without any request from the parties, stayed a case just before trial pending resolution of an appeal from a Board decision *upholding* the validity of the claim at issue. To the contrary, as Judge Bryson has explained, courts have almost uniformly recognized that a stay pending an IPR appeal from a Board decision upholding claims as patentable is inappropriate. *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2020 WL 6270776, at *2 (D. Del. Oct.

26, 2020) (collecting cases). That is because the "mere possibility" that this Court could reverse the Board does not outweigh the prejudice caused by delaying a patent owner's day in court. *See generally Neonode Smartphone LLC v. Samsung Elecs. Co.*, No. 6:20-cv-00507-ADA, 2023 WL 11915742 (W.D. Tex. Mar. 22, 2023). The district court's cursory and deeply flawed reasoning identifies no reason that this case should be the exception. This Court should grant this petition and instruct the district court to proceed with trial as soon as practicable.

At the very least, if this Court elects not to order the district court to proceed with trial, Viasat respectfully requests that this Court set argument in Kioxia's appeal (No. 24-1384) for the next available argument calendar. Briefing in that appeal is complete and, given the district court's unprecedented stay order, there is good cause for accelerating oral argument.

## II.    Issue Presented

Whether the district court clearly abused its discretion in staying this case less than two weeks before trial until this Court decides a pending appeal from the Board's decision finding all challenged claims to be patentable.

## III.    Background

### A.    The District-Court Litigation Is Ready For Trial

On November 29, 2021, Viasat sued Kioxia in the Western District of Texas, asserting that Kioxia infringes the '700 patent. Appx28 at Dkt. 1. (At the same time, Viasat sued Western Digital in a separate action.) In the three years since, the parties

4

fully prepared this case for trial. The Court too has invested significant resources. Little remains to be done other than the trial itself.

The parties have completed fact discovery. In 2022, the parties produced invention documents, core technical documents, and engaged in venue-specific discovery, including multiple depositions. Simultaneously, the parties briefed claim construction and full fact discovery began. At the end of 2022, the Court denied Kioxia's motion for transfer of venue and issued its claim-construction ruling in the same week.

In 2023, the parties completed fact discovery. The parties also produced numerous documents, exchanged written interrogatories and requests for admission, and served final infringement and invalidity contentions. Fact discovery ended in September 2023 with Viasat taking ten depositions of Kioxia employees at the U.S. Embassy in Tokyo. All told, the parties took nearly twenty fact depositions both across the United States and abroad.

After the close of fact discovery, the parties immediately turned to expert discovery. Before opening expert reports were due, the parties met and conferred to narrow the case. As a result, Viasat withdrew all but 8 asserted claims—claims 4, 6, 10, 11, 13, 14, 16, and 21. Kioxia likewise narrowed its invalidity grounds.

After that, in early November 2023, Viasat served three opening reports regarding infringement and damages, and Kioxia served one opening expert report on invalidity. Just weeks later, the parties submitted their respective rebuttal reports—one

from Viasat and two from Kioxia. Throughout December 2023, Viasat and Kioxia took depositions of the opposing party's experts. And on January 5, 2024, Viasat narrowed the asserted claims to four claims of the '700 patent: claims 6, 11, 13, and 16. Kioxia, in turn, narrowed its asserted prior-art combinations.

On January 18, 2024, the parties filed dispositive motions. Kioxia filed two motions for summary judgment and an omnibus *Daubert* motion to exclude the opinions of Viasat's experts. Appx37-38 at Dkt. 130-138. Viasat filed two motions to strike certain opinions of Kioxia's experts and a motion for partial summary judgment. And Kioxia subsequently filed a late motion of summary judgment of no willfulness on February 9. Appx40 at Dkt. 160. Later in February, the parties also moved *in limine* to preclude arguments, testimony, and evidence, with each party seeking to exclude five categories of evidence. Appx41 at Dkt. 175, 176. Finally, on February 29, 2024, the parties submitted a joint pre-trial order which included witness lists, exhibit lists, and extensive deposition designations. Appx42 at Dkt. 191.

The parties were preparing for trial scheduled to begin on April 15, 2024. On March 15, 2024, the Court's clerk emailed the parties to inform them that the trial had been demoted to second in line for the week of April 15, meaning that if the case which had been moved in front of this one proceeded to trial, this case would need to be rescheduled.

On March 28, 2024, the Court held a pretrial conference to hear argument on the outstanding motions. Appx43 at Dkt. 207. The Court ruled on all of the outstanding

motions, granting in part and denying in part the *Daubert* motions, largely denying summary judgment and ruling on the MILs. Appx43 at Dkt. 210. The Court also confirmed that the trial would not proceed on April 15. In addition, the Court ordered supplemental discovery and a mini-*Markman* hearing on an outstanding claim construction issue. On June 25, 2024, the Court reset jury trial for October 28, 2024. Appx44 at Dkt. 217. At that time, the Court's clerk confirmed that this case was the first priority for trial that week. Appx460.

The Court held a mini-*Markman* hearing on July 15, 2024, and construed an additional claim term that week. Appx44 at Dkt. 221. The parties then completed the Court-ordered supplemental discovery. As a result, Kioxia produced additional documents and made a corporate representative available for an additional deposition. Viasat served two supplemental expert reports, Kioxia served three supplemental expert reports, and four experts were deposed again. The parties also filed additional motions coming out of supplemental discovery, including Kioxia's *Daubert* motion to exclude the supplemental opinions of Viasat's experts, Appx45 at Dkt. 226, and Viasat's motion to strike untimely opinions regarding non-infringing alternatives, Appx46 at Dkt. 231.

On September 23, 2024, the Court's clerk emailed the parties: "This trial is currently slotted as the first priority for that week [of October 28]. The calendar will update for other cases as things progress in them, however, this case is fully anticipated to begin trial on the 28th." Appx456. The Court also scheduled a mini pre-trial conference to take place on October 15 to hear these outstanding motions. Appx46 at

7

Dkt. 237. On October 9, given that the parties were rapidly approaching trial, Viasat

informed Kioxia and the Court that it planned to proceed to trial on claim 16.

But instead of ruling on the pending motions and proceeding to trial, the Court

canceled the hearing just hours before it was scheduled and *sua sponte* stayed the case

without any argument. Appx1. The Court decided that the case should be stayed until

the resolution of Kioxia's pending appeal from the Board's decision *upholding the*

*patentability* of claim 16. *See also* § III.C below.

### B. *Inter Partes* Review Proceedings Confirmed The Patentability Of The Majority Of Challenged Claims

Before addressing the district court's reasoning further, Viasat provides some

background on the Board proceedings. Kioxia and Western Digital (defendant in a

separate action) each filed petitions for *inter partes* review of the '700 patent. The two

petitions sought review for different subsets of claims based on different prior art and

different grounds of unpatentability. Claim 16—the claim of the '700 patent that is

asserted against Kioxia—was found valid by the Board. Kioxia challenges that

determination on appeal.

#### 1. The Board Upheld All Challenged Claims As Patentable In Kioxia's *Inter Partes* Review

On May 31, 2022, Kioxia filed its petition for review of claims 1-4, 8, 10-19, and

23-25 of the '700 patent, asserting seven grounds of unpatentability. Appx48. Kioxia

asserted anticipation and obviousness grounds based on four prior-art references,

including Lee and Yamaga as primary references and Jo and Kim as secondary references. Appx66-67.

The Board instituted the petition. But in the institution decision, the Board expressed skepticism that Kioxia would be able to carry its burden to prove unpatentability. Specifically, the Board construed a phrase in independent claim 1— "decode the received encoded data"—more narrowly than Kioxia proposed. Appx257-259. Under that construction, the Board found that Kioxia was not reasonably likely to prevail in its challenge to claim 1 and the claims that depend from it based on the Lee reference. Appx263-264. The Board also was unconvinced by Kioxia's grounds based on Yamaga. Appx283. However, for claims that did not include the construed phrase, the Board found that Kioxia was reasonably likely to prevail using Lee. *See, e.g.*, Appx264-266. Accordingly, the Board instituted the petition.

After full development of the record, the Board rendered its final written decision. The Board found that Kioxia failed to carry its burden to show that *any* of the grounds rendered any of the challenged claims unpatentable. Appx423. The Board considered the claim construction of "decode the received encoded data" again and concluded that the construction provided in the institution decision was correct. Appx377-382. Specifically, the Board rejected Kioxia's contention that decoding can be satisfied by buffering alone. The Board found as a factual matter that the plain and ordinary meaning of "decode" does not "encompass mere buffering." Appx379. It made that finding based on substantial evidence, including the concession of Kioxia's

expert, who testified that "aside from the '700 patent, what a person of ordinary skill would understand decode to mean, it would not be just buffering. Decoding might include buffering, but buffering by itself would not be considered decoding to a person of ordinary skill." *Id.* Because the Board found no lexicography, it applied the plain and ordinary meaning to the construction. Appx379-382. Under that claim construction, the Board found that Kioxia's challenges to claim 1 and its dependents fail because Lee does not disclose a decoding module that "decode[s] the received encoded data." Appx384-394.

The Board also found that claims 15 and 16 are not invalid based on Lee. *See* Appx394-396; Appx407. The Board's analysis for these claims focused on a different limitation from its claim 1 analysis because independent claim 15 does not recite a "decoding module" that "decode[s] the received encoded data." The Board understood this, as did counsel for Kioxia. *See, e.g.,* Appx317 at 17:8-11 (claim 15 "do[es]n't include the decode limitation that we're discussing and, therefore, don't include the Board's initial construction"); Appx264 ("Claim 15 differs from claim 1 in that claim 15 does not recite the phrase, 'decode the received encoded data,' for which we provide a preliminary construction.").

Rather, the Board focused on language actually present in claim 15: "a decoder, communicatively coupled with the flash memory, and configured to: retrieve the encoded data from flash memory to generate a plurality of data streams." Appx394. The Board found that Lee did not teach this limitation because its decoder retrieves

data from a buffer, rather than from flash memory. Appx395. The Board rejected Kioxia's argument that retrieving encoded data "from some intermediary component between the decoder and the flash memory" was sufficient to satisfy these claims. Appx395-396. And the Board discussed a new argument that Kioxia made for the first time on reply but rejected that argument as "inconsistent with the Petition and the original [expert] declaration." Appx396; *see also* Appx388 & n.12 (rejecting new reply evidence). Because Kioxia's grounds for dependent claim 16 did not address the deficiencies that plagued independent claim 15, the Board determined that Kioxia failed there too. Appx407. And the Board rejected all of Kioxia's Yamaga-based arguments, none of which are relevant here. Appx409-422.

On January 22, 2024—while the parties were briefing dispositive motions and long before the Court held any pre-trial conference—Kioxia appealed the Board's decision. Kioxia's appeal is narrow and concerns only two grounds (Lee alone and Lee in combination with Kim) and only a subset of the claims it challenged (1, 2, 10-17, 23-25). *See* Appellants' Principal Br. at 18, *Kioxia Corp. v. Viasat, Inc.*, No. 24-1384 (Fed. Cir. July 2, 2024), Dkt. 18. Kioxia contends in its appeal that the Board misconstrued "decode the received encoded data" and asks for further Board proceedings under what it views as the correct construction.

On November 6, 2024, the parties completed briefing of that appeal. *See* Appellants' Reply Br., *Kioxia Corp. v. Viasat, Inc.*, No. 24-1384 (Fed. Cir. Nov. 6, 2024), Dkt. 26. Oral argument has not been scheduled.

Kioxia did not request a stay of the district court proceedings at any point. Kioxia did not move to stay pending the original IPR proceedings. It also did not move to stay pending appeal.

### 2.    The Board Found Six Challenged Claims Unpatentable In Western Digital's *Inter Partes* Review

On June 10, 2022, Western Digital filed a separate petition seeking *inter partes* review of claims 1, 2, 4, 8, 15, 17, and 19 of the '700 patent. Western Digital's petition raised three grounds of unpatentability based on Wu, Jo, and Wan. Appx180; Appx202; Appx225. Following institution, Kioxia filed a substantively identical petition, and the Board joined Kioxia as a petitioner to Western Digital's proceeding. Appx288.

In that *inter partes* review, the Board found that claims 1, 4, 8, 15, 17, and 19 were anticipated by Wu. The Board also found that none of the challenged claims would have been obvious over Jo in combination with either Wu or Wan. Accordingly, the Board upheld claim 2 as patentable. Western Digital appealed the Board's decision but voluntarily dismissed its appeal. *See* Joint Stip. of Vol. Dismissal, *Western Digital Techs., Inc. v. Viasat, Inc.*, No. 24-1393 (Fed. Cir. April 23, 2024), Dkt. 16. Accordingly, the Board's decision in that proceeding became final and the Patent Office issued an *inter partes* review certificate reporting the outcome.

None of the claims that were found unpatentable are asserted against Kioxia. Viasat had withdrawn all those claims in the district court case against Kioxia during expert discovery by January 2024.

**C.      The District Court *Sua Sponte* Stayed The Case 10 Days Before Trial**

On the morning of the scheduled mini pre-trial conference, the Court delayed the start of the hearing and inquired "if the invalidated claims had reached final judgment or were pending appeal." Appx425. Kioxia responded that the invalidated claims—claims 1, 4, 8, 15, 17, and 19, which were the subject of Western Digital's petition—have reached final judgment and that there is no appeal pending for those claims. *Id.* Viasat responded that it had narrowed its asserted claims to claim 16, which was found valid by the Board in the *inter partes* review and is pending appeal. Appx451.

In response, the Court *sua sponte* stayed the case pending the results of the appeal of the *inter partes* review on claim 16 and cancelled the mini pre-trial conference hearing. Appx450. The Court later issued a written order staying the case pending resolution to the appeal of *inter partes* review. Appx1.

In its order, the district court considered the three traditional stay factors—(1) prejudice to Viasat, (2) the stage of the proceedings, and (3) potential simplification of issues. The Court acknowledged that a stay would inflict undue prejudice on Viasat for multiple reasons. Appx2. It also correctly understood that the advanced stage of the proceedings counseled against a stay. Appx3. Nevertheless, the Court concluded that the potential simplification outweighed the other two factors. Appx4. The Court believed "there is a reasonable likelihood that the PTAB will find the asserted claim unpatentable" because other claims were found unpatentable by the Board. Appx5. The Court did not acknowledge that the Board already found claim 16 patentable.

Following that order, Viasat moved for reconsideration, as the Court's ruling appeared to be premised on inaccurate assumptions about Kioxia's appeal. Appx47 at Dkt. 243. The Court has not decided that motion.

## IV.    The District Court Abused Its Discretion In Staying This Case

Under Fifth Circuit law, a party seeking issuance of a writ of mandamus must "have no other adequate means to attain the relief he desires," must show a "clear and indisputable" right to relief, and must satisfy the issuing court that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008).

In the context of determining whether to stay a case, a district court is given leeway in the exercise of its discretion, as it requires a court to weigh "competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). For a writ of mandamus to issue regarding a court's order to stay, there must be a "clear abuse of discretion" by the court. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953). A clear abuse of discretion "produce[s] patently erroneous results." *Volkswagen of Am.*, 545 F.3d at 312.

District courts consider three familiar factors when determining whether to grant a stay pending *inter partes* review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the

court. "Those same factors govern the question whether to extend the stay, after the PTAB has issued its decision in an IPR proceeding, pending a request for rehearing before the PTAB or an appeal to the Federal Circuit." *IOENGINE*, 2020 WL 6270776, at *2. Importantly, the simplification factor "weighs less heavily in favor of a stay after the PTAB has issued its decision." *Id.*

Staying this case—at the request of no party and less than two weeks before trial was scheduled to begin—was a patently erroneous result. The district court plainly abused its discretion in entering a stay.

## A.    All Stay Factors Weigh Against A Stay Here

The district court correctly understood "that a stay would inflict undue prejudice upon Viasat." Appx2. And it understood that "[t]he advanced stage of this Action"— on the brink of trial—"counsels against a stay." Appx3. But the district court clearly erred in its assessment of the simplification factor and misbalanced the three factors.

In its simplification analysis, the district court looked to "the strength of the relevant IPR petition in the context of the asserted claims" and "the scope of estoppel the movant is bound by." Appx3-4. Its analysis of both factors is so clearly wrong it is an abuse of discretion.

### 1.    The District Court Clearly Erred By Ignoring The Board's Final Written Decision Finding All Challenged Claims Patentable

The district court's analysis of the strength of Kioxia's appeal is baffling. Appx4. And this factor appears to have been the driving force of the district court's decision.

The district court first erred in gauging the strength of Kioxia's Federal Circuit appeal on the basis of statements the Board made in its institution decision. The district court suggested it did so "[t]o better gauge what outcome to expect and therefore what degree of simplification to expect from a stay." Appx4. The district court then said that "[f]or this factor to favor granting a stay, the movant 'must show more than a successful petition, they must show that the PTAB is likely to invalidate every asserted claim.'" *Id.*

The institution decision is irrelevant at this point in this case. The Board issued its final written decision. Kioxia lost on every claim and every ground it challenged. Thus, even if Kioxia had actually requested a stay, Kioxia could *never* "show that the PTAB is likely to invalidate every asserted claim." Kioxia already tried and lost.

The district court clearly abused its discretion to stay the case in the face of the Board's final written decision rejecting all of Kioxia's arguments. As other courts have found, "[t]he fact that the PTAB has issued its decision has a very important impact on the balance of factors." *IOENGINE*, 2020 WL 6270776, at *3. That is because "[w]hen the PTAB instituted the relevant IPRs, the institution decision indicated that the PTAB regarded the challenged claims as reasonably likely to be invalid as written." *Id.* But "[t]he PTAB's decisions on the merits . . . overturn[s] that judgment with respect to the claims that were not found to be unpatentable." *Id.* In order words, once the Board has spoken, the final written decision trumps the institution decision in the simplification analysis, and a decision finding the asserted claims patentable weighs materially against a stay.

16

Additionally, "it is exceedingly unlikely that the Federal Circuit's rulings on the appeals filed from the PTAB's judgments [] will affect any additional simplification of issues." *Neonode*, 2023 WL 11915742, at *4 (citing statistics that "the Federal Circuit reversed only 10% of the matters appealed from the USPTO" in recent years). For that reason, numerous courts—including the district court here—have found that the mere possibility that this Court could reverse the Board's patentability determination "is too speculative to be given much weight." *Id.*; *UNM Rainforest Innovations v. D-Link Corp.*, No. 6:20-CV-00143-ADA, 2023 WL 2706748, at *4 (W.D. Tex. Mar. 29, 2023) ("It is speculative whether the Federal Circuit's decision will simplify the issues in this case because records show that the Federal Circuit issues a 'full affirmance in more than 75% of appeals from the PTAB.'"); *IOENGINE*, 2020 WL 6270776, at *2 ("[I]f the Federal Circuit were to reverse the portions of the PTAB's decisions upholding the validity of the three remaining claims, these cases would evaporate entirely. But, as a statistical matter, the likelihood of that happening is low."); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, No. 14-1430-LPS-CJB, 2018 WL 1061370, at *2 (D. Del. Feb. 26, 2018) ("And while it is of course possible that the Federal Circuit will come to a different conclusion than did the PTAB, the 'mere *possibility* (as opposed to "reasonable likelihood") that the asserted claims could be invalidated [after an] appeal and [that this would] result in simplification is too speculative to be given much weight.'"); *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11CV492, 2015 WL 11439060, at *3 (E.D. Tex. Jan. 5, 2015) (same). The district court abused its discretion in ignoring the

rule it and numerous others have previously endorsed—that a low chance of a different outcome on appeal does not counsel for a stay. *See UNM*, 2023 WL 2706748, at *5 ("In short, the Federal Circuit will likely affirm the PTAB's finding, creating no simplification of issues for this Court.").

Statistically, Kioxia's appeal is unlikely to be successful on the merits. Indeed, it is weaker than the average appeal: Kioxia provides no basis to overturn the Board's determination that claim 16 is valid. The term Kioxia contends was construed incorrectly appears only in claim 1, not claim 15 (from which claim 16 depends). Appx20 at 12:21-44. The Board's construction rests on factual findings about how a skilled artisan would understand "decode," none of which Kioxia challenges on appeal. *See* Appx379-381. Thus, the Board's decision will largely be reviewed for substantial evidence. And regardless, there is a separate limitation of claim 15 ("from flash memory") that the Board found lacking in Kioxia's petition (and for which the Board rejected new reply arguments as being inconsistent with the petition). Appx395-396. Kioxia did not even appeal that part of the Board's decision, which provides this Court with an independent basis for affirmance as to the only claim at issue before the district court. *LSI Corp. v. Regents of Univ. of Minn.*, 43 F.4th 1349, 1355 (Fed. Cir. 2022) ("the Board's timeliness holding constitutes an independent ground for its decision").

This factor weighs against a stay, and the district court clearly erred in finding otherwise.

### 2. The District Court Incorrectly Believed That Kioxia Seeks Outright Reversal Of The Board's Patentability Decision

The district court's explanation of why a stay is appropriate appears to be premised in part on the belief that Kioxia has asked for the Federal Circuit to reverse the Board and find claim 16 unpatentable. Appx4. For example, the district court suggested that "the asserted claim [could] be invalidated on appeal." *Id.* And the district court indicated that "there are only two outcomes relevant for our purposes: the asserted claim is invalidated; the asserted claim survives." *Id.*

That characterization of the possible appeal outcomes is flatly incorrect. Kioxia has not asked this Court to reverse the Board's decision outright. Instead, Kioxia has requested that the Federal Circuit reverse the Board's claim construction and then "vacate the Board's final written decision and remand for further proceedings." *See* Appellants' Principal Br. at 4, *Kioxia Corp. v. Viasat, Inc.*, No. 24-1384 (Fed. Cir. July 2, 2024), Dkt. 18; *see also id.* at 18 ("This Court should vacate the Board's determination . . . and remand for further proceedings."), 29 ("Kioxia respectfully requests that this Court vacate the Board's determination that the challenged claims of the '700 Patent were not shown to be unpatentable and remand for further proceedings.").

Specifically, Kioxia argues that the claim construction of the term "decode the received encoded data" is incorrect and its proposed construction should be used. If this Court agrees and finds that the Board erred in its construction, the case will simply be remanded for further proceedings before the Board. *See, e.g.*, *VLSI Tech. LLC v. Intel*

*Corp.*, 53 F.4th 646, 656 (Fed. Cir. 2022) ("Because the Board erred in construing the phrase 'used for electrical interconnection,' we reverse the Board's construction of that phrase and remand for further proceedings regarding claim 20."); *Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 804 (Fed. Cir. 2018) ("we reverse the Board's construction of the term 'broadcast' and remand to the Board for further proceedings consistent with the construction provided above").

Therefore, the two possible outcomes here are not what the district court believed—that the claim survives or it is invalidated. The outcomes are instead: the asserted claim survives because the Board's decision is affirmed (as is statistically most likely) or the case is remanded to the Board for further proceedings. That is, even if Kioxia were to prevail on its appeal, claim 16 would not be invalidated. The case would simply return to the Board for months of additional proceedings that could be followed by a subsequent appeal. Staying the case for this entire period—which could be years—would result in massive delays and increasing prejudice to Viasat. *See Neonode*, 2023 WL 11915742, at *3 ("The prejudice to Neonode would be compounded by the fact that [a stay] would have no definite duration. The parties' appeals to the Federal Circuit are not constrained by statutory deadlines. Also, if the Federal Circuit were to vacate one or more of the FWDs and send them back to the PTAB for further proceedings, that could result in yet more delay. This disfavors reimposition of a stay.").

The district court's incorrect understanding of Kioxia's appeal led to an indefensible ruling on the simplification factor. For instance, even courts that have

granted a stay during Board proceedings routinely lift those stays pending the appeal from the Board's decision, as the potential for "yet more delay" weighs strongly against a continued stay during an appeal. *Id.* "[T]he case law concerning motions to extend stays pending Federal Circuit review of a PTAB decision in an IPR proceeding substantially favors lifting the stay." *IOENGINE*, 2020 WL 6270776, at *4 (Bryson, J.) (collecting cases); *see also id.* at *6 ("most courts faced with the same issue have employed similar analysis and have rejected motions to extend stays pending Federal Circuit review after some or all of the asserted claims have survived invalidity challenges in IPR proceedings"); *Oyster Optics, LLC v. Ciena Corp.*, No. 17-cv-05920-JSW, 2019 WL 4729468, at *4 (N.D. Cal. Sept. 23, 2019) ("[T]he PTAB must complete an IPR by a statutorily-imposed deadline. . . . The Federal Circuit, however, has no such deadline."); *Realtime Data LLC v. Hewlett Packard Enter. Co.*, No. 6:16-cv-00086-RWS, 2018 WL 3608544, at *3 (E.D. Tex. July 27, 2018) (lifting stay following final written decision finding claims patentable because "the significance of simplification from PTAB proceedings has been realized and any further simplification from an appeal is merely speculative and would only cause further delay"); *Pers. Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 629 (E.D. Tex. 2017) ("Even if the result of further appeals does affect the issues litigated here, 'the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold.'"). The same is true here. Whatever slim potential for simplification there is cannot counterbalance the prejudice to Viasat.

### 3.    The District Court Misunderstood The Estoppel That Applies to Viasat

The district court's scope of estoppel analysis in whole reads:

> Section 315(e) of Title 35 subjects IPR petitioners to estoppel if the PTAB finds the claims invalid similar to plaintiff's other claims that were brought before the PTAB. Plaintiff would be estopped from asserting in district court that the claims subjected to appeal are invalid over the obviousness combinations instituted upon *and* any grounds plaintiff reasonably could have asserted against those claims in its IPR petitions. *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022). This is a broad estoppel.

Appx4 (emphasis in original).

As an initial matter, the district court appears to have treated Plaintiff Viasat as the movant for assessing the scope of estoppel. But Viasat did not move for a stay and therefore is not the movant. Indeed, as noted previously, there was no motion to stay and so no moving party at all.

But regardless, the district court misstated the law of estoppel in multiple respects. The district court first said that "Section 315(e) of Title 35 subjects IPR petitioners to estoppel if the PTAB finds the claims invalid similar to plaintiff's other claims that were brought before the PTAB." Appx4. The first part of that sentence is correct—estoppel under § 315(e) applies to IPR petitioners. But the rest of the sentence makes no sense and is not the law. Estoppel under § 315(e) only applies if the Board finds the claims *valid*, not invalid. Specifically, after the Board issues a final written decision upholding a claim's patentability, the IPR petitioner is estopped from asserting

that the claim that was the subject of the IPR "is invalid on any ground that the petitioner raised or reasonably could have raised." 35 U.S.C. § 315(e)(2). Section 315 is exclusively about the types of *invalidity* arguments an IPR petitioner can maintain after a final written decision. Viasat is the patent owner, not the petitioner. Viasat is not estopped under § 315(e). Kioxia is.

The district court's next sentence is erroneous for the same reasons: "Plaintiff would be estopped from asserting in district court that the claims subjected to appeal are invalid over the obviousness combinations instituted upon *and* any grounds plaintiff reasonably could have asserted against those claims in its IPR petitions." Appx4. Once again, Plaintiff Viasat is the patent owner, not the petitioner. The district court's statement makes no sense on its face, as there is no circumstance in which Viasat would advance an invalidity argument against its own asserted patent. The estoppel the district court appears to have been contemplating attaches only to Kioxia. That estoppel attached in November 2023 when the Board issued its final written decision, Appx366, and Kioxia narrowed its invalidity defenses in accordance with that estoppel. All simplification that could result from § 315(e) took place long before the district court's stay.

To the extent that the district court was trying to say that Viasat would be estopped from arguing its patent claims are valid if the Board were to invalidate other claims, that also is not the law. This Court recently "addressed the question of whether a finding underlying an unpatentability decision in an IPR proceeding collaterally estops

23

a patentee from making validity arguments regarding separate, related claims in district court litigation." *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1362 (Fed. Cir. 2024). The Court "h[e]ld that it does not." *Id.* Because a defendant must meet a higher burden of proof in the district court to invalidate patent claims, there is no collateral estoppel. *Id.* A patentee therefore "should be provided an opportunity to defend the validity of its [] claims [that] were not shown to be unpatentable in the IPR." *Id.* In the case of "claims that have not been found unpatentable . . . those claims remain presumptively valid and can only be found invalid in district court litigation by clear and convincing evidence." *Id.* That is the case here too. While the Board did find some claims of the '700 patent invalid (in Western Digital's IPR), none of those claims are asserted against Kioxia. Viasat is not estopped from arguing the validity of claims that are presumed to be valid and have not been found unpatentable by the Board.

Thus, the district court's entire analysis about the scope of estoppel consists of incorrect and irrelevant non-sequiturs. Viasat is not subject to any estoppel. This factor—and the court's clearly erroneous analysis—cannot support a stay.

*      *      *

In other cases, the district court has correctly weighed the stay factors and decided that a stay pending resolution of a Federal Circuit appeal would be inappropriate. And the circumstances of those cases are far less extreme than here. For example, in *Neonode*, the district court found that the patentee (like Viasat here) "has an interest in the timely enforcement of its patent rights," which would be undermined by

24

a stay of "no definite duration" during the appeal. 2023 WL 11915742, at *2-3. Unlike Viasat, the district court proceedings were still 15 months away from trial (which weighed slightly in favor of a stay). *Id.* at *3. But the court declined to stay the case with respect to claims that had been found patentable. The district court rejected the "mere possibility" that the Federal Circuit would reverse the Board's ruling that the "claims were not proven unpatentable." *Id.* at *4. Instead, the district court found it "exceedingly unlikely" that the appeal would result in additional simplification because "the Federal Circuit reversed only 10% of the matters appealed from the USPTO." *Id.* The simplification factor therefore weighed against a stay. *Id.* at *5. The district court therefore concluded:

> The Court finds that only one factor slightly favors reimposing a stay in this case. [Plaintiff] would be prejudiced by delay of this trial, slated to occur around the time when the Federal Circuit may issue an opinion in the appeals of the IPRs discussed above. Although this Action is not in an advanced stage, [Defendant] has failed to support its claims about simplification of issue . . . .

*Id.*

The district court's analysis of the simplification factor should have been identical here. Coupled with the *extremely* late stage of this case, the factors all clearly weigh against any stay. The court's decision to impose a stay anyway is a patently erroneous result.

### B.  Mandamus Relief Is Appropriate

The three factors for mandamus relief have been met here. *Cheney*, 542 U.S. at 380-81. As explained above, Viasat has a clear and indisputable right to issuance of the writ given the clearly erroneous result of staying this case on the eve of trial. Under the unique and extreme circumstances, the writ is appropriate. And Viasat has no other adequate method of obtaining the desired relief—a new trial date as soon as possible. *See Ultratec, Inc. v. CaptionCall, LLC*, 611 F. App'x 720, 721 (Fed. Cir. 2015) (review of a stay order is appropriate for mandamus review).

### C.  In The Alternative, Viasat Requests For This Court To Expedite Kioxia's IPR Appeal

To the extent that the Court declines to issue a writ of mandamus, Viasat alternatively requests that this Court expedite the appeal that caused the district court to stay the case. Briefing in that appeal finished in early November 2024. *See* Appellants' Reply Br., *Kioxia Corp. v. Viasat, Inc.*, No. 24-1384 (Fed. Cir. Nov. 6, 2024), Dkt. 26. But absent expedition, the oral argument likely will not be scheduled for six months, if not longer. Viasat will be prepared for oral argument as soon as this Court's schedule allows.

## V.  Conclusion

The district court's *sua sponte* stay was a clear abuse of discretion, and Viasat respectfully requests that this Court issue a writ of mandamus directing the district court to vacate its stay order and schedule trial in this matter as soon as practicable.

Alternatively, Viasat requests that this Court accelerate scheduling oral argument in Kioxia's appeal, No. 23-1384.

November 22, 2024

Respectfully submitted,

*/s/ Meg E. Fasulo*
J. Scott McBride
Matthew R. Ford
Nevin M. Gewertz
Meg E. Fasulo
Ravi D. Shah
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Tel: (312) 494-4400
scott.mcbride@bartlit-beck.com
matthew.ford@bartlit-beck.com
nevin.gewertz@bartlit-beck.com
meg.fasulo@bartlit-beck.com
ravi.shah@bartlitbeck.com

Nosson D. Knobloch
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
nosson.knobloch@bartlit-beck.com

*Counsel for Petitioner Viasat, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally spaced typeface using Microsoft Word 365 in 14-point, Garamond font and includes 6,625 words.

November 22, 2024

*/s/ Meg E. Fasulo*
Meg E. Fasulo
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Tel: (312) 494-4400
meg.fasulo@bartlit-beck.com

*Counsel for Petitioner Viasat, Inc.*

## PROOF OF SERVICE

I hereby certify that on November 22, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system. I further certify that unless indicated otherwise, the foregoing was served via electronic mail upon the following:

Roger Fulghum
Michael Hawes
Robinson Vu
Elizabeth D. Flannery
Michael Silliman
Baker Botts L.L.P.
910 Louisiana Street
Houston, Texas 77002
roger.fulghum@bakerbotts.com
michael.hawes@bakerbotts.com
robinson.vu@bakerbotts.com
liz.flannery@bakerbotts.com
michael.silliman@bakerbotts.com

*Counsel for Kioxia Corporation & Kioxia America, Inc.*

Nolan McQueen
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
nolan.mcqueen@bakerbotts.com

*Counsel for Kioxia Corporation & Kioxia America, Inc.*

Lute Yang
Baker Botts L.L.P.
101 California Street, Suite 3200
San Francisco, CA 94111
lute.yang@bakerbotts.com

*Counsel for Kioxia Corporation & Kioxia America, Inc.*

Mark D. Siegmund
Cherry Johnson Siegmund James PLLC
7901 Fish Pond Road, Second Floor
Waco, TX 76710
msiegmund@cjsjlaw.com

*Counsel for Kioxia Corporation & Kioxia America, Inc.*

Served via Federal Express:
The Honorable Alan Albright
U.S. District Court W. Dist. of Texas
800 Franklin Avenue, Room 301
Waco, TX 76701

*Presiding Judge*

November 22, 2024

*/s/ Meg E. Fasulo*
Meg E. Fasulo
BARTLIT BECK LLP
*Counsel for Petitioner Viasat, Inc.*